## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | | |
|---|---|---|
| **DEXTER GRIFFIN,** | : | |
| | : | **Crim. No. 1:09-cr-30** |
| Movant, | : | |
| | : | |
| v. | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | **28 U.S.C. § 2255** |
| Respondent. | : | |
| | : | |

## RESPONDENT UNITED STATES' ANSWER
## IN OPPOSITION TO DEXTER GRIFFIN'S MOTION TO VACATE, SET
## ASIDE, OR CORRECT SENTENCE
## PURSUANT TO 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255, the Rules Governing Section 2255 Proceedings, 28 U.S.C. foll. § 2255 (Section 2255 Rules), and this Court's Order, the United States submits this answer to the motion of Dexter Griffin to vacate, set aside, or correct sentence.   The United States opposes the motion.  As demonstrated below, the motion should be dismissed or, in the alternative, denied.

## I.   STATEMENT OF THE CASE

### A.  Procedural and Factual History

On December 23, 2009, Dexter Griffin pleaded guilty to one count of a superseding indictment. Plea Tr., Doc. 97.  Griffin was charged in six counts of a fifteen-count indictment but, under the terms of the plea agreement, Griffin was permitted to plead only to Count Ten:   distribution of crack cocaine within 1000 feet of a public housing facility and employing a person under the age of 18 to assist in avoiding detection, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), 21 U.S.C. § 860(a), 21 U.S.C. § 860(c), 21 U.S.C. § 860(c)(1), 21 U.S.C. § 860(c)(2), and 18 U.S.C. § 2.  Superseding Indict., Doc. 61; Plea Agreement, Doc. 67 at 2-3.

As part of the plea agreement, Griffin acknowledged that his plea of guilty to Count Ten would subject him to a minimum mandatory sentence of one year, up to a maximum sentence of 60 years.  Plea

Agreement, Doc. 67 at 3.  Griffin also acknowledged that the district court was not bound by any estimate of probable sentencing range that may have been presented to him previously, and further acknowledged that the appropriate Guidelines range would not be determined until after a presentence investigation report had been completed.  Plea Agreement, Doc. 67 at 4.

In exchange for Griffin's plea of guilty, the Government dismissed the following charges pending against Griffin:

▸ conspiracy to possess with intent to distribute crack cocaine in an amount of 5 grams or more (Count One), in violation of 21 U.S.C. § 846 i/c/w 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B)(iii);

▸ distribution on August 13, 2009, of crack cocaine within 1000 feet of a public housing facility (Count Eight), in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), and 21 U.S.C. § 860(a);

▸ distribution on August 24, 2009, of crack cocaine within 1000 feet of a public housing authority (Count Nine), in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), 21 U.S.C. § 860(a), and 18 U.S.C. § 2;

▸ distribution on September 15, 2009, of crack cocaine within 1000 feet of a public housing authority (Count Thirteen), in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), 21 U.S.C. § 860(a), and 18 U.S.C. § 2; and

▸ distribution on September 22, 2009, of crack cocaine within 1000 feet of a public housing authority (Count Fourteen), in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(C), 21 U.S.C. § 860(a), and 18 U.S.C. § 2;

Superseding Indict., Doc. 61

2.      **The preparation of the Presentence Investigation Reports.**

Following the entry of the guilty plea, Griffin's case was set for sentencing.  The probation office prepared its first Presentence Investigation Report on March 10, 2010.  PSR, Mar. 10, 2010.  In the March 10, 2010, Report, the probation office calculated a total offense level of 17 and a criminal history category of VI, for an advisory Guidelines range of 51 to 63 months.  PSR, Mar. 12, 2010, ¶ 96.  The probation office revised the Report on March 12, 2010.  PSR, Mar. 12, 2010.  In the revised Report, the probation office calculated a total offense level of 23, and a criminal history category of VI, for an advisory Guidelines range of 92 to 115 months.  PSR, Mar. 12, 2010, ¶ 96. The increase in the Guidelines range in the revised Report resulted from an increase in the base offense level because the probation office initially failed to calculate a base offense level based on the use of a minor child and the location of the offense on public housing authority property.  *Compare* PSR, Mar. 10, 2010, ¶ 17, *with* PSR Mar. 12, 2010, ¶ 17. On March 23, 2010, counsel for Griffin submitted a sentencing memorandum and objections to the PSR; Sent. Memo; PRS Obj.  Counsel submitted amended objections on April 9, 2010.  Am. PSR Obj., Doc. 89.

The probation office revised the Report again on April 16, 2010.  PSR, Apr. 16, 2010.  As with the March 12, 2010, version the probation office calculated a total offense level of 23, a criminal history category of VI, and an advisory Guidelines range of 92 to 115 months.  PSR, Apr. 16, 2010, ¶ 95.

The probation office submitted a final Presentence Investigation Report on July 16, 2010.  PSR, Doc. 127.  As with the previous Report, the probation office began with a base offense level of 26.  PSR, Doc. 127 ¶ 17.   This time, however, the probation office recommended a two-level increase for obstruction of justice and gave no decrease for acceptance of responsibility.  PSR, Doc. 127 ¶¶ 21, 25.

In the final Report, the probation officer opined that Griffin had "committed perjury under oath," based on the hearing held June 23, 2010.  PSR, Doc. 127 ¶ 14.  Because Griffin's statements to the court on June 23, 2010, contradicted statements made by him at his change of plea hearing, the probation

officer determined that on one of the two occasions Griffin had to be lying and that it was "obvious that he committed perjury on one of the two hearings." PSR, Doc. 127 ¶ 14. The probation officer thus concluded that "an adjustment for obstruction appears to be appropriate." PSR, Doc. 127 ¶ 14. The probation officer then withheld the adjustment for acceptance of responsibility, citing United States Sentencing Commission Guidelines Manual §3E1.1, commentary note 4, and noting that an obstruction of justice enhancement "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." PSR, Doc. 127 ¶ 15.

In the final Report, therefore, Griffin's total offense level was 28, rather than 23. PSR, Doc. 127 ¶ 26. Griffin's criminal history category stayed at VI, PSR, Doc. 127 ¶ 60, resulting in an advisory Guidelines imprisonment range of 140 to 175 months. PSR, Doc. 127 ¶ 94.

### 3.      The first sentencing hearing, April 22, 2010.

The parties first appeared for sentencing on April 22, 2010. Tr., Doc. 176. Counsel for Griffin began by identifying Griffin's objections to the Presentence Investigation Report. Tr., Doc. 176 at 2-6. One of the objections noted by counsel was that Griffin believed that he should be given 5K consideration for information he provided during the debriefing that followed the entry of the plea agreement. Tr., Doc. 176 at 6.

After counsel for Griffin listed the objections, Griffin then addressed the court directly and asserted that he had been promised a 5K by the Government and that the Government had failed to come through on its promise. Tr., Doc. 176 at 6-8. Counsel for Griffin then informed the court that he had advised Griffin that the information he provided during debriefing was not sufficient to warrant a 5K. Tr., Doc. 176 at 9. Counsel also informed the court that he had listened to the tape recording of the plea hearing and that he did not hear any promise from the Government of a 5K to Griffin. Tr., Doc. 176 at 9-10. The district court elected to suspend the hearing and directed the court reporter to transcribe the plea hearing. Tr., Doc. 176 at 12.

**4.      Griffin's letter to the court of June 22, 2010.**

The district court reset Griffin's sentencing for June 23, 2010.  Tr., Doc. 177.  On June 22, 2010, the court received a letter from Griffin in which he catalogued several complaints about the services of his lawyer claiming, among other things that his lawyer:

- acted in bad faith,

- failed to defend him with diligence,

- coerced him,

- misled and misinformed him,

- manipulated him knowing that he suffered from depression, and

- allowed convictions to be used against him twice in the calculations of his guidelines range.

Letter, Doc. 101 at 1-2.  As relief for his attorney's alleged behavior, Griffin requested that the charges against him be dismissed, or that the court sentence him to time served or probation.  Letter, Doc. 101 at 2.  At no place in the letter did Griffin ask to withdraw his plea of guilty or even ask for a new lawyer.

**5.      The second sentencing hearing, June 23, 2010.**

The parties appeared for the sentencing hearing on June 23, 2010.  The court initiated the proceeding by addressing the parties about the letter received from Griffin.  The court read the letter into the record and confirmed with Griffin that he did, in fact, send the letter.  Tr., Doc. 177 at 3-6.  The court elicited from Griffin's counsel that he had not discussed the letter with Griffin because he had only received the letter that morning.  Tr., Doc. 177 at 3-4. After ascertaining from Griffin that he did, in fact, send the letter, the court then advised Griffin that if he wanted to present evidence about the contentions made in the letter, the court would place him under oath. Tr., Doc. 177 at 6.

After advising Griffin that he would be placed under oath, the court explained that if he testified under oath, he would have to be truthful with the court and complete in his answers.  Tr., Doc. 177 at 6. The court then informed Griffin of the consequences should he fail to be truthful to the court with his answers, stating:

> . . . . otherwise you are subject to — could be subjected to prosecution for any false statement.  For instance, for perjury, false swearing, or for a false statement, perjury or —
>
> What is the third one?  I can't remember now.
>
> False swearing. Yes. That's the other one.  That's the third one.  They are all so close I can't remember.
>
> But I want you to be aware of that because this is serious business.  The Court takes it seriously as you found out when you sent this letter to the Court.

Tr., Doc. 177 at 6-7.  After warning Griffin of the consequences of testifying falsely, the court undertook to explain his concerns about the inconsistencies between Griffin's statements at the change of plea hearing and his allegations in the letter.  Tr., Doc. 177 at 7-14.

After explaining to Griffin at length about the potential inconsistencies between his testimony at the plea hearing and his allegations in the letter, the court, once again, reminded Griffin that he would be testifying under oath, if he wished to present evidence of his allegations, stating:

> . . . . and I re-read that into the record in light of the circumstances before we proceed further to let you know, I'm willing to hear the evidence in the case, but I am going to hear sworn testimony.  I am not going to hear rhetoric from out there from behind the table.  So whatever you want to say on the matter that you have written the Court about, you can come forward and be sworn, and you can make your statement, if the government has questions, they can ask it.

Tr., Doc. 177 at 14-15.  Griffin elected to come forward and be sworn.  Tr., Doc. 177 at 15.

As was the letter he wrote to the court, Griffin's testimony was directed at his attorney, his attorney's behavior toward him and his attorney's failings.  Griffin expressed that many of the things he said at the change of plea hearing were done at his lawyer's prompting.  And, as he did at the first

sentencing hearing, Griffin asserted that he had been promised a 5K during his plea hearing and that the promised 5K was never given.  Early in the proceeding, Griffin asserted that the only reason he pleaded guilty was because he thought a 5K was going to be filed on his behalf.  Tr., Doc. 177 at 19.  In response to Griffin's contention that he only pleaded guilty because of the promised 5K, the following exchange occurred that demonstrated that Griffin was not truthful with the court at the change of plea hearing:

> THE COURT:  There was nothing in the plea agreement, was there?
>
> DEFENDANT GRIFFIN:  No, sir.
>
> THE COURT:  When I asked you was there any promises, what was your answer?
>
> DEFENDANT GRIFFIN:  I told you no because of advice from my attorney.
>
> THE COURT:  Wait just a minute.  So you're telling me that I ask you, under oath, a question, and you lied because your lawyer promised you something?  Is that what you are telling me?
>
> DEFENDANT GRIFFIN: Basically, because I —
>
> THE COURT: Well, why should I believe that?
>
> DEFENDANT GRIFFIN:  He told me not to object to anything that you say.  He said just go along.
>
> THE COURT: That wasn't an objection.  I was asking you about your understanding of what the agreement was between you and the government.
>
> DEFENDANT GRIFFIN: I didn't know any better, Your Honor.
>
> Tr., Doc. 177 at 19-20.

After questioning how it could be that, at 46-years-old, Griffin did not know to tell the truth under oath, the court and Griffin had the following exchange:

> THE COURT: You don't know what it means to raise your hand to tell the truth?
>
> DEFENDANT GRIFFIN: No, I didn't know what it meant as far as getting that 5K.
>
> THE COURT:  So you are upset with Mr. Williams, not because he asked you to lie to the Court under oath, but because the deal you thought he had on the side didn't come through?  Is that the problem?  If the deal had worked the way you say it, lying would have been fine is what you are saying to me?

DEFENDANT GRIFFIN:  Yes, sir.

Tr., Doc. 177 at 20-21.

The court then allowed Griffin to address the concerns he had with the way his prior convictions should be counted for sentencing purposes, Tr., Doc. 177 at 21-26.   After Griffin had expressed his mistrust of his lawyer's representation of him, the court asked Griffin what relief he wanted.   Tr., Doc. 177 at 26.   Griffin answered that he wanted a new attorney, but never indicated that he wanted to withdraw his plea of guilty.   Tr., Doc. 177 at 26.   The court later asked, "So is the issue about pleading guilty or is the issue about what the lawyer told me?   I mean, that's what I'm saying when I don't know what you are asking."   Tr., Doc. 177 at 29.   Griffin never responded with a request to withdraw his plea of guilty.

After asking what relief Griffin wanted, the court and Griffin once again discussed at length the 5K that Griffin claimed had been promised.   The court sought specific information as to what was promised and when and by whom.   Tr., Doc. 177 at 31-41.

After discussing the 5K, Griffin began discussing his depression and why he sold drugs.   When Griffin started explaining that it was out of character for him to sell drugs, the court interrupted, stating, "Mr. Griffin, I am not here to argue about what you usually do.   We are talking about what these matters mean to your legal case, how — what is it that you know about that Mr. Williams was wrong when he told you that being depressed was not an [sic] a defense to selling drugs?"   Tr., Doc. 177 at 43-44.   Griffin again explained that he was severely depressed when he was selling drugs.   Tr., Doc. 177 at 44.

After seemingly exhausting the issue of Griffin's claim of depression, the court attempted to get Griffin to better explain the circumstances of the promised 5K.   Tr., Doc. 177 at 46-51.   After hearing more from Griffin, the court asked, "So it is correct, then, that nobody promised you a 5K motion prior to the time you entered your plea of guilty, even under your version of the facts?"   Tr., Doc. 177 at 51.   Griffin responded by saying, "Understood."   Tr., Doc. 177 at 51.

The court then returned to the issue of Griffin's claim of depression, ultimately discovering from Griffin that in June or July of 2009 he had been taking "pain meds every day and psych meds, as much as I could stand them." Tr., Doc. 177 at 52-55. The court, recalling that Griffin, at the change of plea hearing on December 23, 2009, had denied being under the influence of drugs or suffering from any mental disease or defect, engaged Griffin in the following colloquy:

> THE COURT: All right.So that I understand you, so you are saying your answers that you gave to me under oath were not true at the plea hearing?
>
> DEFENDANT GRIFFIN: Yes, sir.
>
> THE COURT: So what were the true answers?
>
> DEFENDANT GRIFFIN: Truest sense is that —
>
> THE COURT: True answers?
>
> DEFENDANT GRIFFIN: The true answers that believed I was pleading guilty based upon a — that the 5K would be part of the sentencing. That's the brunt of it, is that I was hoping that, and I was believing that if the 5K was incorporated the guidelines would fall to a certain degree, that I would be able to get a more lenient sentence.
>
> Tr., Doc. 177 at 55-56.

After Griffin asserted he did not want to withdraw his plea of guilty, the conversation turned, once again, to the subject of the 5K. Griffin acknowledged that his "whole thing was banking on that 5K motion." Tr, Doc. 177 at 58.

Continuing in his belief that he had been promised a 5K, Griffin called witnesses to testify. Griffin called Alan Dasher, the attorney for the Government who was present at the change of plea hearing. Tr., Doc. 177 at 62. Dasher had no recollection of being asked about a 5K motion during the plea hearing. Tr., Doc. 177 at 63. Griffin then called his own attorney to testify. Tr., Doc. 177 at 64. Williams testified that he had no recollection of asking Dasher about a 5K motion. Tr., Doc. 177 at 64.

Griffin then called the probation officer, Anthony Lindsey, to testify. Tr., Doc. 177 at 65. Lindsey recalled discussing acceptance of responsibility, but had no recollection of Williams and Dasher discussing anything in regard to a 5K. Tr., Doc. 177 at 65. The district court also asked his deputy clerk

and the court reporter, who were present at the change of plea hearing, whether they had any recollection of the events as claimed by Griffin and both denied any memory of such an occurrence.  Tr., Doc. 177 at 66-67.

Williams also explained on the record that he and Ferguson had talked several times about giving Griffin a 5K, but Ferguson was not willing to do so.  Tr., Doc. 177 at 68.  Ferguson confirmed that Griffin was debriefed, and that he and Williams had discussed the possibility of a 5K but that it was Ferguson's belief that Griffin had not provided information rising to the level of substantial assistance.  Tr., Doc. 177 at 68-69.  Ferguson stated that he had told Williams that Griffin might be a candidate for a Rule 35 motion in the future.  Tr., Doc. 177 at 69.

After having heard all of Griffin's complaints about his attorney, as well as his continued claim that he had been promised a 5K, the court asked Griffin if he wanted to withdraw his plea of guilty, which resulted in the following exchange:

> THE COURT:  I understand your objective to get to your family, but we haven't gotten to the sentence yet, and you are telling me that you only pleaded guilty because someone promised you 5K1.1, which means you did not voluntarily plead guilty, so you are saying you want to withdraw your plea.  Is that right?
>
> DEFENDANT GRIFFIN: Can I change my plea?
>
> THE COURT:   What do you want to change it to?
>
> DEFENDANT GRIFFIN: No contest.
>
> THE COURT: There is no such thing in federal court in this case.  In a felony case.  No sir.
>
> Tr., Doc. 177 at 71.

After explaining, once more to Griffin about the importance of his plea being voluntary, the court, yet again, asked Griffin what he wanted to do, whether he wanted to go to trial or not.  Tr., Doc. 177 at 72-73.  In response, Griffin acknowledged that he was guilty and stated that he did not want to go to trial, stating, "That's why I accepted responsibility when I did because I know I was wrong, and I don't want to

— I don't want to impress the Courts that I want to get anything other than a guilty plea." Tr., Doc. 177 at 73.

The court and Griffin then discussed yet again why Griffin pleaded guilty, whether it was in fact because he believed he was guilty, or because he believed he would get the 5K. Tr., Doc. 177 at 76. Yet again, Griffin asserted that he wanted to continue with his plea of guilty, stating, "I want to plead guilty, Your Honor, because it is the best decision for me to make." Tr., Doc. 177 at 77.

Ultimately, the court decided to suspend the matter and to appoint new counsel to represent Griffin. Tr., Doc. 177 at 77. The court stressed that it was done without criticism of Williams. Tr., Doc. 177 at 77. The docket reflects the filing of an oral motion to withdraw plea of guilty on June 23, 2010.

### 6.      The court's order of June 30, 2010.

On June 30, 2010, the district court entered an order in which it described the June 23, 2010, hearing as "an evidentiary hearing . . . in which  [Griffin] contested the voluntariness of his guilty plea." Order, Doc. 104 at 1. The court's order reflected the lack of clarity as to whether Griffin was, in fact, seeking to withdraw his plea, as it noted that the court had "reserved ruling on [Griffin's] oral motion to withdraw his guilty plea, pending [Griffin's] opportunity to confer with new counsel, because upon the Court's direct inquiry [Griffin] was not clear or definitive as to whether he truly wished to withdraw his plea." Order, Doc. 104 at 1. The court then directed Griffin's new attorney to meet with Griffin, discuss whether Griffin wished to withdraw his guilty plea, and advise the court by July 14, 2010, of the status of the motion to withdraw the guilty plea. Order, Doc. 104 at 1-2. On July 28, 2010, when no indication of the status of the motion was received from Griffin, the court entered an order stating that the court would proceed to rule on the oral motion to withdraw guilty plea without further hearing or briefing. Order, Doc. 107.

11

### 8.      The final sentencing hearing, January 28, 2011.

The parties convened for sentencing again on January 28, 2011.  Tr., Doc. 180.  At the start of the sentencing hearing, the court noted that Griffin had "made a motion which the Court interpreted as requesting a withdrawal of his plea."  Tr., Doc. 180 at 3.  The court asked counsel to clarify the status of the motion, prompting counsel for Griffin to confirm that Griffin did not wish to withdraw his plea.  In fact, counsel emphasized that Griffin had not intended to make a request to withdraw his plea stating:

> MR. JONES:  Your Honor, we stand on the — Well, we would ask the Court to accept a formal withdrawal of anything that might be perceived as a request on behalf of my client, Mr. Griffin, to withdraw his plea.  We stand by that. . .In consultation with Mr. Griffin, we are desirous of moving forward.  So that if the Court understood that to be a request to withdraw, that was not the case, but to the extent that we need to clear it up, we make an oral manifestation today that that was not the case.  If the Court interprets it as that, we withdraw it at this time.

> Tr., Doc. 180 at 4.

The court then confirmed with Griffin that Jones had correctly stated his position, after which the court denied the motion as moot.  Tr., Doc. 180 at 4-5.

New counsel for Griffin took the opportunity at sentencing to explain why Griffin was so insistent about the promise of a 5K and then asserted that Griffin "now understands that there was no promise of a 5K made."  Tr., Doc. 180 at 7.  Counsel asked the court to consider Griffin's debriefing as evidence of his desire to cooperate with the government.  Tr., Doc. 180 at 7.  Counsel also asked the court to take Griffin's depression problems into consideration when determining the sentence.  Tr., Doc. 180 at 9.

Counsel for Griffin then took up the recommendation in the Presentence Investigation Report that Griffin receive a two-level increase in his offense level for obstruction of justice.  Tr., Doc. 180 at 10.  Counsel argued that Griffin's sentence should not be increased because of statements Griffin made to the

court while "he was trying to shed himself of that counsel and acquire different counsel." Tr., Doc. 180 at 10.

After Griffin and counsel for the Government had the opportunity to address the court, the court responded to Griffin's objections.  The court explained that it was not Griffin's admission that he lied that was the basis for the adjustment for obstruction.  Rather, as the court explained at length, the basis for the obstruction was Griffin's continued insistence that he had been promised a 5K when "no one could believe in good faith" that such a promise had been made.  Tr., Doc. 180 at 14-15.

The court further explained that Griffin should have been up front with the court about what he wanted instead of making unfounded accusations about others.  Tr., Doc. 180 at 15-18.  The court then explained that there had to be consequences as a result of Griffin's misrepresentations to the court, which is why the court found that Griffin's conduct amounted to obstruction.  Tr., Doc. 180 at 18-20.

In imposing sentence, the district court calculated an advisory sentencing range of 140 to 175 months, based on a total offense level of 28 and a criminal history category of VI.  Tr., Doc. 180 at 40.  The court imposed a sentence of 157 months imprisonment.  Tr., Doc. 180 at 40.  Counsel for Griffin raised no objections to the sentence imposed.  Tr., Doc. 180 at 44.   Final judgment was entered on February 1, 2011.  J., Doc. 124.  .

**B.      Statement of Facts.**

Pursuant to the stipulation of facts contained in the plea agreement, Griffin admitted selling crack cocaine within 1000 feet of a public housing authority facility on the following dates:  August 13, 2009, August 24, 2009, August 25, 2009, September 15, 2009, and September 22, 2009.  Plea Agreement, Doc. 67 at 8-10.  The parties stipulated that the amount of crack cocaine attributable to Griffin was at least two grams, but less than three grams.  Plea Agreement, Doc. 67 at 10.  With respect to the August 25, 2009, sale, Griffin stipulated that at the time he sold the crack cocaine, he had a 5-year-old

child on his lap and that he employed the child to aid him in avoiding detection.  Plea Agreement, Doc. 67 at 8-9.

### B.  Grounds for Relief as Set Forth in the 28 U.S.C. § 2255 Motion

Griffin asserted the following grounds for relief in his initial motion: Ground One - Ineffective Assistance of Counsel based on objectively unreasonable performance of counsel during plea negotiation; (Doc. 207 at 4);   Ground Two—.Ineffective Assistance of Counsel based on deficient pre-sentence investigation and deprivation of the Court's opportunity to apply the "parsimony principle; *Id.* at 5; Ground Three—Ineffective Assistance of Counsel related to Advice regarding the Use of a Minor to Avoid Apprehension Portion of his Conviction; *Id.* at 7; Ground Four—Ineffective Assistance of Counsel based on testimony of Counsel given in response to Petitioner's claim of certain promises made to induce the plea; *Id.* at 8.

### C.  Response to Factual Allegations

The United States asserts that Petitioner's motion is devoid of factual allegations that support his claims for relief.   Nevertheless, liberally construing the motion, and pursuant to § 2255 Rule 5, the United States responds to the factual allegations by denying that Petitioner is entitled to the requested relief.

### D.  Petitioner's Use of Other Federal Remedies

Petitioner filed a notice of appeal, asserting that 1) he should have been appointed substitute counsel when he elected to testify regarding his lawyer's mishandling of the case; 2) that the sentencing enhancement based on obstruction of justice should not have been applied in his case; 3) that his plea of guilty somehow violated the Fifth Amendment's prohibition against double jeopardy.  Doc. 126  The Eleventh Circuit Court of Appeals affirmed and judgment issued as mandate on May 8, 2013.  Doc. 202.

On May 1, 2014, Petitioner filed a motion seeking collateral review of his sentence pursuant to 28 U.S.C. § 2255. Doc. 207.

14

## II.        MEMORANDUM OF LAW

It is well-settled in this district that once a conviction based on a guilty plea has become final, any challenge to the plea involves a very defined and narrow inquiry.  If a § 2255 petition is chosen as the vehicle used to mount the attack, the only issue on review by the district court is whether the record shows that the plea was entered knowingly and voluntarily, and whether the court had the authority to accept the plea and to impose sentence.  *United States v. Broce*, 488 U.S. 563, 109 S. Ct. 757 (1989); *United States v. Kaiser,* 893 F.2d 130 (11th Cir 1990).  Stated simply, an intelligent and voluntary guilty plea, made with the aid and advice of competent counsel, is free from collateral attack.  *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-47(1984).

The record demonstrates that Petitioner's plea was the result of a voluntary and intelligent choice. The plea agreement set out his thorough understanding of both the conditions and consequences of his plea.  Doc. 67.  He acknowledged having read the agreements, having had the agreements read to him by his attorney, and having discussed them with his attorney.    Doc. 97 at 7.  He attested to his full understanding of, and agreement to, the terms of the plea agreements.  *Id*. at 7-9. The Defendant acknowledged an understanding that the agreement was not binding on the Court.  Doc. 97 at 8.  The Defendant further acknowledged his understanding that if the Court accepted the plea agreement, not only would it not necessarily be bound by the terms of the agreement but also that the Court might choose to impose a sentence outside the Advisory Guideline Range set by the PSR.  Doc. 97 at 29.

Petitioner then moved forward with entry his plea, which the Court accepted.  Doc. 67.  Prior to accepting the plea, the Court conducted a full and detailed inquiry into the voluntariness of Petitioner's plea, and satisfied itself that his plea was the result of a knowing and voluntary choice.   Doc. 97. Petitioner had no questions about the plea agreement or rights he would be waiving by entering the plea. At no time did Petitioner indicate that he had been promised anything or that his attorney had given him any misinformation or deceived him.  On the contrary, he expressly stated he had received no promise from anyone beyond what the Government said it would do for him (Doc. 97 at 7-11), and acknowledged that he could not rely on and should not enter his plea based on any sentencing estimate anyone, including

his attorney, had provided him Doc. 97 at 29.   After the stipulated facts were read into the record, Petitioner sought to clarify that while he did have a child with him during the transaction and the child's presence did have the effect of shielding the contraband from view, that he did not bring the child with him for the purpose of shielding the contraband from view.  Doc 97 at 36-42.

The representations of a defendant at a plea hearing with the findings made by the court accepting the plea constitute "a formidable barrier in any subsequent collateral proceeding." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977).  The statements of a defendant in open court are presumed to be true. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  When a defendant tells the trial judge that no promise has been made, he cannot later claim inducement based on a promise.  *See e.g., Alvereze v. United States*, 427 F.2d 1150 (5th Cir. 1970); *Rosembaum v. United States*, 413 F.2d 298(5th Cir. 1969).  Nor does an erroneous sentence estimate by defense counsel make a guilty plea involuntary.  *See Holland v. United States*, 406 F.2d 213 (5th Cir. 1969); s*ee also United States v. Frontero*, 452 F.2d 406, 411 (5th Cir 1971), *Floyd v. United States,* 260 F.2d 910,912(5th Cir 1958), *cert denied*, 359 U.S. 947, 79 S. Ct. 728 (1959).  As mentioned above, it was later suggested by certain pleadings that the Petitioner wanted to withdraw his plea.  However, the Petitioner repeatedly reiterated his guilt and his desire to enter a plea of guilty.

### C.      No Showing of Ineffective Assistance of Counsel.

In support of his claim of ineffective assistance of counsel, Petitioner alleges Ground One - Ineffective Assistance of Counsel based on objectively unreasonable performance of counsel during plea negotiation;  (Doc. 207 at 4);  Ground Two—.Ineffective Assistance of Counsel based on deficient pre-sentence investigation and deprivation of the Court's opportunity to apply the "parsimony principle; *Id.* at 5; Ground Three—Ineffective Assistance of Counsel related to Advice regarding the Use of a Minor to Avoid Apprehension Portion of his Conviction; *Id.* at 7; Ground Four—Ineffective Assistance of Counsel based on testimony of Counsel given in response to Petitioner's claim of certain promises made to induce the plea; *Id.* at 8.

1.      *Strickland* Standard.

The standard for assessing claims of ineffective assistance of counsel is the familiar and well established two-part test set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under this standard the movant must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687, 104 S. Ct. at 2064. To demonstrate deficient performance, the defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To establish prejudice, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

As to the first prong, the court's review of whether counsel's conduct fell below an objective standard of reasonableness "must be highly deferential," avoiding the distortion of hindsight, but viewing "the conduct from counsel's perspective at the time." *Id.* at 689, 104 S. Ct. at 2065. The assessment requires a court to "indulge a strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Id.* It is the defendant's burden to overcome the presumption of adequate representation and prove that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*).

Once the defendant demonstrates constitutionally deficient performance, however, the burden remains on the defendant to show prejudice to his defense. Meeting that standard requires that the defendant "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Importantly, the court must consider prejudice in light of the totality of the evidence, not isolating any particular alleged error. *Id.* at 695-96.

2.      No Showing of Deficient Performance by Counsel.

Petitioner's claims fails under *Strickland*. Petitioner's first claim once again asserts facts which he has previously admitted were not true. In particular, he asserts that counsel coerced him into the entry of

this plea.  First, during his plea of guilty he stated that no person had coerced or threatened him with regard to his plea.  Doc. 193 at 8 and 44.  Then in a letter dated June 22, 2010, Petitioner claimed that he had been coerced by counsel.  Doc. 101.  At an evidentiary hearing held on June 23, 2010, Petitioner presented no evidence of coercion.  Doc. 177.  Petitioner alleges that the plea agreement was not beneficial to him.  However, as the sentencing court pointed out, the original charge brought against Petitioner for conduct for which he consistently has stated his guilt would have subjected Petitioner to a minimum mandatory sentence of 120 months and a maximum possible sentence of life imprisonment.  As a result of the plea that counsel negotiated on Petitioner's behalf, his advisory guideline range was 92 to 115 months.  Doc. 177 at 57.  Thereafter, Petitioner's obstructive and perjurious conduct caused an increase in the advisory guideline which led to his mid-range sentence of 157 months.  Counsel had done a commendable job during the plea negotiations.  Further, counsel had filed a sentencing memorandum including mention of Petitioner's depression in an attempt to cause a sentence at or below the low end of the advisory guidelines.  Doc. 177 at 60.

Petitioner's second claim alleges that counsel did not properly investigate and present information regarding his depression in order to allow the court to downwardly depart or vary in his case.  In fact, there was ample evidence before the Court of Petitioner's mental condition.  .  Petitioner himself presented information about his depression at the June 23, 2010 hearing (Doc. 177) and at his sentencing on January 28, 2011.  Doc. 180.  In fact at the January 28, 2011, Tony Jones, then counsel for Petitioner went so far as to suggest to the Court a downward variance or departure to a range of 36 to 48 months imprisonment.  Doc. 180 at 36.   Petitioner has provided no facts which he claims would have been discovered had counsel investigated the matter in the manner he suggests.

Petitioner's third claim alleges that that counsel was ineffective in explaining to him the increase in his sentence which might come about based on the use of a minor allegation.  In particular, the Government understands that his assertion deals with the application of U.S.S.G. § 2D1.2(a)(3) to his case which served to increase his base offense level from 18 to 26.  There was an extended discussion related to the facts to which the Defendant would stipulate regarding the involvement of the child.  Doc.

97 at 37-45.  This is akin to an allegation that counsel misadvised Petitioner as the anticipated guideline range.  As cited above, an erroneous sentence estimate by defense counsel make a guilty plea involuntary.  *See Holland v. United States*, 406 F.2d 213 (5th Cir. 1969); s*ee also United States v. Frontero*, 452 F.2d 406, 411 (5th Cir 1971), *Floyd v. United States,* 260 F.2d 910, 912 (5th Cir 1958), *cert denied*, 359 U.S. 947, 79 S. Ct. 728 (1959).  During this exchange, the Court explicitly asked Petitioner again whether he had been coerced to enter the plea and he replied that he had not.  Doc. 97 at 42.

Petitioner's asserted factual bases for his ineffective assistance claim are amply refuted by the record.  His § 2255 claims should therefore be denied under *Stickland*'s performance prong.

**3.     No Showing of Prejudice.**

Assuming Petitioner had shown deficient performance by counsel, Petitioner's assertions are refuted by the record and do not support a finding of ineffective assistance of counsel which would warrant the requested relief.   His ineffective assistance claim should therefore be denied.   As to Petitioner's first claim regarding ineffective representation during plea negotiations, Petitioner's sentencing position was prejudiced not by counsel's performance but by Petitioner's own post-plea obstructive and perjurious conduct.  No prejudice has or can be shown by Petitioner as to this allegation.  As to Petitioner's second claim that counsel was ineffective in failing to adequately flesh out his request for a lesser sentence based on mental health evidence.   Petitioner is unable to state that how the sentencing court would have viewed the unspecified additional evidence of his depression that he claims exists but was not presented.  From the sentencing court's handling of the colloquy with Petitioner at the June 23, 2010 hearing, it seems unlikely that the sentence would have been affected by evidence of Petitioner's recently having become depressed.  Doc. 177 at 41-46.  Finally, while the Petitioner alleges that an increased sentence was imposed as a result of his plea including the use of a minor prong of 21 U.S.C. § 860, this came about only as a result of Petitioner's knowing and intelligent plea of guilty to facts which supported this subsection.  Therefore, Petitioner has not and cannot establish prejudice.

**III.     AN EVIDENTIARY HEARING IS NOT WARRANTED**

Petitioner has requested an evidentiary hearing on his ineffective assistance claim.  Doc. 128 at 5.

Where a § 2255 motion is not dismissed, Section 2255 Rule 8 directs the court to "review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  Rule 8, Rules Governing Section 2255 Proceedings.  "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record."  *United States v. Holmes*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519 (5th Cir. 1979)).  *See also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (holding that a hearing is not required when claims for § 2255 relief are based on unsupported generalizations); *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (finding that petitioner was entitled to an evidentiary hearing, but reaffirming that an evidentiary hearing is not required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous); *and United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984) ("In cases where the files and records make manifest the lack of merit of a [s]ection 2255 claim, the trial court is not required to hold an evidentiary hearing.")

The United States maintains that Petitioner has failed to set forth sufficient allegations to entitle him to a hearing.  In this case, the record contains testimony of both Petitioner and his counsel received by the Court at the motion to withdraw hearing as to the ineffective assistance claims Petitioner now asserts in his § 2255 petition.  The remaining grounds set forth in his motion and supporting memoranda are based on unsupported generalizations which are likewise refuted by the record.  The record makes manifest the lack of merit of Petitioner's § 2255 claim.  Therefore, the Court should find that no hearing is warranted and deny the motion on the merits.

This the 24 day of June 2014.

MICHAEL J. MOORE
UNITED STATES ATTORNEY

BY:      __/s_____
         Leah E. McEwen
         Georgia Bar No. 490763

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the **Respondent United States' Answer in Opposition to Griffin's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255** with the Clerk of the Court using the CM/ECF system and mailed a copy to the movant at the following address:

Dexter Griffin
REG No. 87729-020
FCI Mariana
Inmate Mail/Parcels
P.O. box 7007
Marianna, FL  32447

This the 24 day of June 2014.

MICHAEL J. MOORE
UNITED STATES ATTORNEY

BY:        /s_____
Leah E. McEwen
Georgia Bar No. 490763

Assistant United States Attorney
United States Attorney's Office
Middle District of Georgia
201 W. Broad Avenue, 2nd Floor
Post Office Box 366
Albany, Georgia 31702
Telephone: (229) 430-7754
Email: leah.e.mcewen@usdoj.gov